ODOM, Justice
 

 (dissenting).
 

 The grand jury of Morehouse Parish returned' an indictment against Senator Leo F. Terzia for dual office holding, as denounced by Act ' 123, Extra Session of 1921. The indictment charges that he did, in said parish, willfully and unlawfully, “while holding an office of profit, to-wit: State Sénator, from the Twenty-eighth Senatorial District of Louisiana, and who, while holding such office, did accept a second office of profit, to-wit: Conservation Agent of the Department of Conservation of the State of..Louisiana, and did, after his acceptance of said second- office, as Agent of the Department of Conservation, exercise the duties and receive the emoluments of the first. office, to-wit: State Senator.”
 

 Section 3, Act 123, Extra Session of 1921, the act under -which the defendant was. indicted, reads as follows: “Any person holding one office of profit who shall, accept a second office of profit, and shall after his acceptance of the second office, exercise any of the duties or- receive any of the •emoluments of the"' first • office shall be guilty-of' a' misdemeanor;■ and shall- on conviction be punished by a fine not exceeding Five Hundred Dollars, or imprisonment not less than thirty days nor more than Six months, or both at the discretion of the Court.”
 

 The defendant before arraignment excepted to the jurisdiction of the court on the ground that his duties as State Senator are and were performed at the seat of government, which is at Baton Rouge in the Parish of East Baton Rouge, and that all of the emoluments paid to him as State Senator between the dates specified in the indictment were paid to him in Baton Rouge, and that he received- none of the emoluments of said office in Morehouse Parish.
 

 Testimony was taken on the trial of the exception. After hearing the testimony, the trial judge sustained the exception, holding that the offense) if. any .was committed, was- committed in East Baton Rouge Parish and that the district court of Morehouse Parish had no jurisdiction, and ordered the defendant discharged.
 

 The only question presented is whether, under the law and the evidence taken at the trial of the plea to the jurisdiction, the district court of Morehouse Parish has jurisdiction of the offense.
 

 The defendant was the only witness called. He testified that he was a resident of Morehouse Parish, where he had- resided for many years; that he was -elected to the State Senate in 1932 and re-elected in 1936, and was holding that office.at-the time he was alleged to have violated the provisions of Act 123, Extra Session, of 1921. He testified that, while holding the office of State Senator,- he:was appointed agent of
 
 *590
 
 the Conservation Commission at a salary of $300 per month, and that, after this appointment, he continued to hold the office of State Senator, performing all of the duties connected with that office and receiving all the emoluments thereof.
 

 He identified photostatic copies of three certificates issued to him, showing the amounts due him for his per diem and mileage while attending sessions of the Legislature in 1938. These were issued to him after he had been appointed conservation agent. These certificates were all issued at the state capítol in Baton Rouge and were there delivered to him.
 

 One of these certificates is in the following words and figures:
 

 “No. 185
 

 “Office of
 

 “Committee on Auditing and Supervising of Expenses of the Senate
 

 “Baton Rouge, La., Jun 17 1938
 

 “To The Auditor of Public Accounts of The State of Louisiana:
 

 “This is to Certify, That L. F. Terzia or order is entitled to the sum of two hundred fifty-two and no/100 Dollars, for m & per diem 2nd 20 days Regular Session 1938 as senator 28th district in accordance with the provisions of Article No. 3, of the Constitution, and Act No._
 

 “Approved 193
 

 “Entered and Approved:
 

 “ A. S. Nunez
 

 “Chairman Committee on Auditing and Supervising the Expenses of the Senate.
 

 “$ 252.00 “ Earl K. Long
 

 “Lieutenant Governor and President of the Senate.”
 

 This certificate bears the following endorsement on the back: “Pay to Bastrop Bank & Trust Co., L. F. Terzia”. The stamp of the Bastrop Bank & Trust Co. shows that the certificate was deposited in that bank' on June 17, 1938. The Bastrop Bank & Trust Co. evidently forwarded it to the Fidelity Bank & Trust Co. of Baton Rouge, for it bears the stamp of that bank, dated June 20, 1938, and was marked paid on that date.
 

 Certificate No. 34, dated May 28, 1938, is for the same amount as the one copied above and is endorsed “L. F. Terzia”. This one, like the one copied above, was deposited in the Bastrop Bank & Trust' Co., on May 27, 1938, and, like the other, seéms to have been forwarded by the bank to the Fidelity Bank
 
 &
 
 Trust Co. of Baton Rouge, where it was received and marked paid on May 30.
 

 A third certificate seems to have been deposited by Senator Terzia in the Fidelity Bank & Trust Co. in Baton Rouge.
 

 Senator Terzia testified that Certificates No. 34 and No. 185 were deposited in, or cashed by, the Bastrop Bank & Trust Co. As to these, the defendant gave the following testimony:
 

 “Q. I believe you' testified that Warrant 34 and Warrant 185 were deposited by you in person or by mail at the Bastrop Bank & Trust Co.? A. Deposited or cashed.
 

 “Q. After you deposited them there, did you subsequently thereto draw the money therefrom by check?’-A. Yes.
 

 “Q. Where did you actually receive the cash, then, was it at the Bastrop Bank &
 
 *592
 
 Trust Co.? A. I may never have received the cash.
 

 “Q. Where was the cash ? A. In Bastrop Bank & Trust Co.
 

 “Q. Is that in Morehouse Parish? A. Yes Sir.”
 

 The written instruments issued and delivered to Senator Terzia in Baton Rouge are referred to in the testimony as “warrants”. If they are properly so called, they are orders by which the drawers authorized the payment to him of a specified sum of money. On their face, they are certificates addressed to the Auditor of Public Accounts, signed by the Chairman of the Committee on Auditing and Supervising the Expenses of the Senate, and by the Lieutenant Governor, showing that Senator Terzia was entitled to receive certain sums of money for mileage and per diem as Senator from the Twenty-Eighth District. They are certificates showing that he was entitled to certain sums of money as the emoluments of the office of State Senator.
 

 Under the law, a State Senator is entitled to receive $10 in money for each day he attends a session of the Legislature. The amounts received by him are the “emoluments” of his office. As defined by Webster, the word “emolument” means “Profit from office, employment, or labor; compensation; perquisites, fees, or salary”.
 

 Certificate No. 34, issued May 28, 1938, certifies that Senator Terzia was entitled to receive $252 mileage and per diem for the first 20 days' of the Regular Session of 1938. Certificate No. 185, dated.June 17, is for a like amount for mileage and per diem, for the second 20 days of the Regular Session of 1938. He testified that $200 of the amount was for his per diem and the balance for- mileage. He testified further that he did not receive the amounts of these two certificates in Baton Rouge but that these amounts were paid to him by the Bastrop Bank & Trust Co. in Morehouse Parish, where the certificates or warrants either were cashed for him by that bank or were deposited in that bank to his credit, and, if deposited, the amounts were drawn from that bank by him. He therefore received the emoluments of his office, not in Baton Rouge, where the certificates were issued, but in Morehouse Parish, where he received the money. The fact that the Bastrop Bank & Trust Co., after paying Senator Terzia the amount of these certificates or warrants, or crediting the amounts to his account, forwarded them in due course to the Fidelity Bank in Baton Rouge, where they were finally paid, is not material. The material point is that the defendant received the amounts in More-house Parish, where the indictment was brought.
 

 One point decided in the case of State v. Roy, 155 La. 238, 99 So. 205, is pertinent here. The defendant in that case was indicted in Rapides Parish for obtaining money by false pretenses. The facts were that, of the amount received by him, $500' was represented by a cashier’s check issued by a bank in Alexandria, in Rápides Parish on a bank in New Orleans. The check was mailed at Alexandria to defendant in Red River Parish, where defendant then was. He received the check in Red River Parishs
 
 *594
 
 and deposited it in a bank in Red River Parish, and the proceeds were applied to his account in that bank. The balance of the sum received from Powers, from whom it was alleged that defendant had received the money by false representations made in Rapides Parish, was represented by sight drafts on Powers, who was in Rapides Parish, by defendant, who was in Red River Parish. The drafts so drawn were deposited by defendant in a bank in Red River Parish, where he was given credit on the books of the bank for the amount of each draft. The drafts were sent through the mail by the bank in Red River Parish through the ordinary and regular banking channels to a bank in Alexandria for presentation to Powers, and each of the drafts was in due course presented to Powers in Rapides Parish and there honored by him.
 

 The question as to where the defendant received the money was pertinent, because, under the law, the crime of obtaining money by false pretenses is within the jurisdiction of the court of the parish in which the money was obtained and not of the parish where the false pretenses may have been uttered. The court held that, although the $500 cashier’s check was issued by a bank in Rapides Parish and finally paid in that parish, and although the drafts were drawn on a bank in Rapides Parish, the defendant received the money in Red River Parish because he there deposited the check and the drafts, and was given credit for the proceeds in that parish.
 

 In the case at bar, the certificates were issued and delivered to the defendant in the Parish of East Baton Rouge. But the money, the emoluments of his office, was received in Morehouse Parish.
 

 Section 3, Act 123 of the Extra Session of 1921, provides that persons who hold one office of profit and accept a second office of profit and, after acceptance of the second office, “exercise any of the duties or receive any of the emoluments of the first office shall be guilty of a misdemeanor”. The act is written in the disjunctive, so that the doing of either act is a violation of the statute. The indictment charges that the defendant in this case exercised the duties of the first office after accepting the second office and that he received the emoluments of the first office after accepting the second.
 

 The question whether Senator Terzia accepted a second office of trust or profit is not before the court, and I express no opinion as to that point. I go no further than to. say that, under the testimony adduced at the trial of the plea to the jurisdiction, defendant did receive the emoluments of the first office — that of State Senator — in the Parish of Morehouse, where the indictment was returned, after it is alleged that he accepted the second office, and for that reason the district court of Morehouse Parish has jurisdiction.
 

 For these reasons, I think the judgment sustaining the exception to the jurisdiction and discharging the defendant should be reversed.
 

 I dissent.