HALL, Judge.
The defendant, Ward Edward Jackson, appeals his convictions after jury trial for attempted aggravated rape and attempted second degree murder in violation of LSA-R.S. 14:27, 14:30.1, and 14:42, as well as the 37V2-year concurrent sentences imposed. The errors assigned are that the evidence is insufficient to support either of the convictions and that the sentences imposed constitute excessive punishment. Finding both contentions to be meritless, we affirm the convictions and sentences appealed. Facts
The testimony of the victim, officers, investigators, other witnesses, and physical evidence presented at trial established the following facts surrounding the commission of these offenses.
*64 In the early evening hours of September 3, 1983, both the 17-year-old female victim and the defendant were present in a Tallu-lah bar which was hosting a political rally. They were previously acquainted with each other and briefly conversed on that occasion. The testimony is conflicting as to who approached whom, yet it is clear that a conversation took place in which the victim asked the defendant for a marijuana cigarette.
After the victim asked the defendant for a “joint”, Jackson told her to wait outside. Momentarily, he came out of the bar, felt his pockets, and stated that he must have left the marijuana at home. Jackson told her to meet him at the halfway point between the bar and his nearby residence. When the victim reached the halfway point, she observed Jackson standing on his porch and beckoning her to come into the house.
She entered and cautioned him not to try anything. Jackson rolled a marijuana cigarette which they smoked. Immediately af-terwards, Jackson picked up the victim, threw her on the bed, and tried to disrobe her. The victim strenuously resisted the defendant but he succeeded in disrobing her from the waist down and achieving penetration. The victim kicked the defendant off of her, fell from the bed, and rolled under it. As the defendant began to move the bed around the room the victim continued to roll under it until she became immobilized between the bed frame and the wall. Jackson armed himself with a hammer and began hitting her on the head. After receiving several blows to the skull, the victim lay still as if dead. The defendant wrapped his victim in sheets, dragged her from the house, and threw her in the back of his red pickup truck at which point he struck her two more times in the head with the hammer.
After the defendant had stopped at a nearby intersection approximately one block from his residence, when the truck began moving slowly, the victim jumped out of the truck and ran in the opposite direction. Calling for help as she ran, she collapsed after traveling a short distance. Several individuals responded to her cries for help,- found her lying semi-nude near the edge of the street, and witnessed a red pickup truck driven by the defendant pass by the location traveling down a one-way street in the wrong direction. The truck moved slowly until it neared the spot where the victim lay at which time it accelerated and sped past the location.
Approximately two hours later, the defendant was picked up by a local police officer three or four miles outside of Tallu-lah as he was walking down the middle of the highway toward town. Jackson’s truck, out of gas and with the key still in the ignition, was later located on a gravel road approximately six miles from Tallulah. A search of the defendant’s truck and his residence indicated that there had been a struggle in the house and that an injured person had bled while in the residence and while in the bed of the truck. Type 0 blood scrapings were taken from the floor of Jackson’s bedroom. The victim’s blood type is type 0. Jackson’s blood type is A+. Jackson suffered no injuries or loss of blood on the night in question.
When the victim arrived at the hospital, she was in shock and near death. She had multiple lacerations on her head in which bone fragments were visible, indicating that she had been severely beaten in the head.

Sufficiency of Evidence Argument

The defendant contends that his convictions are invalid under the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), because the evidence was insufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that the defendant possessed the requisite criminal intent to attempt an aggravated rape or second degree murder. The weight of the evidence against the defendant is overwhelming and this assertion is without merit.
The essence of the defendant’s argument is that he was drugged prior to the commission of these offenses and, consequently, lacked the requisite specific intent to commit these crimes. He contends the trier of *65 fact was irrational in concluding this element of the offenses had been proven beyond a reasonable doubt. Additionally, the defendant insinuates that he was “framed” for the commission of these offenses.
The defendant testified that he told the victim inside the barroom that he did not smoke dope. He denied having any further dealings with the victim that night. Jackson testified that he noticed he was feeling funny after drinking only one beer and a Tom Collins at the bar. The defense insinuated that someone drugged the defendant by slipping something into his mixed drink while he was in the restroom. The defendant left the bar and walked toward his nearby residence. Jackson testified that when he opened the door to the house someone grabbed him and placed a rag smelling of either ammonia or ether over his face. He testified that he recalls nothing from that point in time until the time at which he awoke in a road ditch several miles outside of Tallulah. Jackson claims that he informed the arresting officer at the time he was picked up that his money and wallet were missing. The defendant claims to have been carrying approximately $700 in his wallet that night. There were several contradictions in details between Jackson’s earlier statements to the police and his testimony at trial, including Jackson’s earlier assertions that he did not know the victim and had no contact with her on the night in question. Other than his own testimony, the defendant presented no testimony or evidence to corroborate his story except the statement from a city employee that sometime in 1982 he found the defendant’s wallet in a trash can.
The commission of attempted aggravated rape and attempted second degree murder requires the presence of specific criminal intent. LSA-R.S. 14:27. Furthermore, LSA-R.S. 14:15(2) provides that “where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.” The evidence presented in this case falls far short of creating any reasonable doubt as to the presence of specific criminal intent.
The evidence relating to whether or not the defendant was in a drugged condition sufficient to preclude the presence of specific criminal intent at the time of the commission of these offenses can be summarized as follows. The evidence shows that the defendant had one beer and one mixed drink at the bar shortly before the rape and murder attempts. Several individuals in contact with the defendant that night at the bar noticed nothing abnormal about his physical or mental condition prior to his leaving the bar. The defendant’s story concerning the ether or ammonia-filled rag is totally uncorroborated by the evidence. The evidence shows that the defendant and the victim shared a single marijuana cigarette immediately prior to the incident. At the time the defendant placed his victim’s body in the bed of the pickup truck, he had the presence of mind to deliver two additional hammer blows to her head, apparently in an attempt to insure her death. Two individuals observed the defendant driving his pickup immediately after the victim was found lying next to the street. Several individuals noticed the red pickup and that it was driving slowly until it approached the spot where the victim lay at which time it accelerated past the spot going up a one-way street the wrong way.
When the defendant was picked up by a local police officer approximately two hours later several miles out of town, he was not wearing a shirt, was very muddy, and appeared distraught. However, the defendant immediately recognized his arresting officer and called him by name. The officer testified that, while the defendant smelled of alcohol, his speech and physical movements appeared coherent and normal. The other officers who observed the defendant after his arrest and during his booking noted nothing abnormal in his speech or movement. The defendant himself testified in detail concerning the events which transpired for some time prior to the *66 time that the police car picked him up and concerning the events which transpired during his subsequent booking. The defendant’s testimony leaves no room for doubt that he was coherent at the time of his arrest.
In sum, the only evidence tending to show that the defendant was drugged at the time these offenses were committed is his own unsubstantiated and uncorroborated statements which it is apparent that the trier of fact chose not to believe. The evidence is sufficient for a rational trier of fact to conclude that specific criminal intent was possessed by this defendant at the time he committed these offenses. Additionally, the defendant’s mere insinuation that he was “framed” in and of itself raises no reasonable doubt which could have prevented a rational trier of fact from concluding that he was the individual who perpetrated these crimes.
This assignment of error is without merit.

Excessive Sentence Argument

The defendant contends that the trial court failed to adequately consider and give appropriate weight to the mitigating factor of the defendant’s drugged condition in imposing sentence. Additionally, defendant contends that the sentences imposed are needless and purposeless impositions of pain and suffering. Both these contentions are meritless.
The record reveals that the trial judge specifically considered the presence or absence of mitigating factors in imposing sentence in this case. The trial judge found that the victim’s conduct in no way provoked the defendant’s attack and further found that there existed no mitigating circumstances in this case tending to justify the defendant’s behavior. The paltry evidentiary showing by the defendant concerning his allegedly drugged condition at the time these offenses were committed has been discussed in detail in disposing of the defendant’s insufficiency of the evidence argument. As noted previously, there is little or no evidence other than the defendant’s self-serving statements which tends to establish drug influence. The trier of fact rejected this specious and unsubstantiated claim. We find no abuse of discretion by the trial judge in the consideration and rejection of drug influence as a mitigating factor in this case. The evidence simply does not support the defendant’s claim of mitigation.
The defendant’s claim that the sentences imposed are needless and purposeless impositions of pain and suffering is also without merit. The record reveals that these offenses were committed in a particularly brutal and heinous manner. This defendant has an extensive history of criminal activity. As a juvenile, Jackson committed an offense similar in nature to the instant crimes. Jackson’s adult criminal record contains several felony convictions. At the time of sentencing, several charges were currently pending against the defendant. The trial judge correctly noted there are no mitigating factors in operation in this instance. In light of these facts, the defendant’s argument that he should have received a suspended sentence and probation is obviously meritless.
The 37V2-year concurrent sentences imposed in the instant case were well within statutory limits. The maximum period of imprisonment which could have been imposed in this case is 50 years on each offense. LSA-R.S. 14:27, 14:30.1, and 14:42.
The trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of an abuse of discretion. State v. McClinton, 399 So.2d 178 (La.1981). The role of the appellate court in reviewing allegedly excessive sentences is not to substitute its judgment for that of the trial court, but rather to correct manifest abuses of discretion. State v. Douglas, 389 So.2d 1263 (La.1980).
Given the operative facts of this case and this defendant’s extensive criminal record, the trial judge committed no abuse of dis *67 cretion in imposing the concurrent 37V2 -year sentences handed down in this case.
This assignment of error is without merit.

Decree

The defendant’s convictions and sentences are affirmed.
Affirmed.